787 F.2d 592
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
PRENTICE PRYOR, Petitioner-Appellant,
v.
JIM ROSE, Warden; WILLIAM LEECH, Attorney General,
Respondents-Appellees.
 83-5898
 United States Court of Appeals, Sixth Circuit.
 3/20/86
 
 AFFIRMED
 M.D.Tenn.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE
 Before: MERRITT and WELLFORD, Circuit Judges; PECK, Senior Circuit Judge.
 
 PER CURIAM
 
 1
 Petitioner Prentice Pryor appeals the judgment of the district court dismissing his petition for a writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254.
 
 
 2
 Petitioner was convicted of aggravated rape in the Sumner County, Tennessee Criminal Court on January 29, 1980, and sentenced to life imprisonment in the state penitentiary. The Tennessee Court of Criminal Appeals affirmed the judgment of the trial court overruling petitioner's motion for a new trial, and the Tennessee Supreme Court denied petitioner's application for permission to appeal.
 
 
 3
 On May 13, 1981, Pryor filed a petition for post-conviction relief in the state trial court. After an evidentiary hearing, the state trial judge dismissed the petition. The Tennessee Court of Criminal Appeals affirmed the judgment of the trial court dismissing the petition, and the Tennessee Supreme Court denied the petitioner's application for permission to appeal. The petitioner thus exhausted the claims he now presents in his petition for federal habeas relief.
 
 
 4
 On May 28, 1982, Pryor filed the instant petition for a writ of habeas corpus in federal district court pursuant to 28 U.S.C. Sec. 2254. By order entered November 9, 1983, the district court denied the petition. In his memorandum opinion, Judge Nixon agreed with the rulings of the state courts that petitioner received effective assistance of counsel at trial, and found the state trial court's error in failing to advise petitioner of his right to represent himself to be harmless error.
 
 I.
 
 5
 Petitioner's first argument on appeal is that the district court erred in dismissing his claim of ineffective assistance of counsel. The state trial court appointed two attorneys to represent petitioner at trial: John Wesley Jones, an experienced criminal attorney, and the public defender for Summer County since 1972, William B. Vest, a former Tennessee Bureau of Investigation agent, who assisted in investigative work for petitioner's defense. Petitioner first voiced dissatisfaction with his attorneys during a conference to plan defense strategy on the day before the trial began. This dissatisfaction was promptly brought to the attention of the trial court with a request for a continuance. This would have allowed petitioner to employ attorney Clifford Maness to defend him, as petitioner wished. At the hearing on ineffective assistance of counsel, attorney Jones justified an insanity plea by stating:
 
 
 6
 We arrived at an insanity defense primarily for this reason, in all the conversations we had with Mr. Pryor, the ones I was present in and the ones that I was not, the only thing we could ever learn was that Mr. Pryor had no recollection of what had transpired that day, absolutely nothing. Therefore, we had no way to proceed but to take the State's theory and try to work out what we thought the State would try to prove. We were faced with these facts, very simply, that a woman had been abducted from the Kroger parking lot, taken out Nashville Pike to a location near the railroad track, had subsequently escaped, taken a knife that the abductor had, and stabbed him with that knife, and fled back to her home which was a short distance from Nashville Pike. The police were called and went immediately to the scene and discovered Mr. Pryor there with a stab wound. There was other physical evidence, cigarette packages and things of that nature, in the automobile. There was the testimony of the young lady herself. We were in a position of not being able to attack her. She was a college student, the daughter of a Church of Christ minister, and had absolutely no blemish on her record we could find. We couldn't find any prior sexual episodes or escapades or any consent that we could use. We couldn't verify any consent because we'd have to have Mr. Pryor to testify to even establish that fact to start with. So, we were simply faced with the fact that our client said he could not tell us what happened. We finally arrived at the only thing he recalled was for several weeks prior to the incident he was camped out at a campground near Gallatin and had used drugs, speed, marijuana, and alcohol. We had him sent to the Middle Tennessee Health Center, I believe it is now, to have him evaluated there. We did have in the record some facts that showed he had some problems mentally.
 
 
 7
 He further pointed out that he had obtained a psychiatric evaluation of Pryor, and that the doctor was unable to find that petitioner met Tennessee standards with respect to that defense. The attorneys were also aware of Pryor's lengthy history of abuse of drugs and alcohol.
 
 
 8
 In ruling on the petitioner's claim of ineffective assistance of counsel, the district court reviewed the evidence noted above, noting that the Tennessee Court of Criminal Appeals, in affirming the denial of post-conviction relief, had stated that counsel were 'doing the best they could with a hopeless situation.' The district court wrote:
 
 
 9
 A criminal defendant's Sixth Amendment right to counsel is protected as long as counsel provides 'reasonably effective assistance.' Adams, 703 F.2d at 980 (citing Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974)). In other words, 'defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest . . ..' Beasley, 491 F.2d at 696. A defendant is not denied his right to effective assistance if counsel makes an erroneous tactical decision so long as the decision would have seemed reasonable at the time. Adams, 703 F.2d at 981; Poole v. Perini, 659 F.2d 730, 736 (6th Cir. 1981), cert. denied, 455 U.S. 910 (1982). In light of the adverse evidence of the petitioner's guilt and the consequently difficult situation confronted by his trial attorneys, this Court is of the opinion that counsel's decision to plead insanity as a defense was a reasonable tactical decision at the time and would have seemed reasonable to a competent trial attorney. Accordingly, the petitioner was not denied his Sixth Amendment right to effective assistance of counsel. The petitioner's first ground for habeas relief is therefore without merit.
 
 
 10
 Petitioner argues that the presentation of an insanity defense by his appointed counsel constituted ineffective assistance of counsel. Specifically, petitioner argues that because rape is a general intent crime in Tennessee and voluntary intoxication is a relevant defense only to specific intent crimes, the attempt 'to show that Petitioner was insane because of alcohol and drug intoxication' constituted ineffective assistance.
 
 
 11
 In Strickland v. Washington, 104 S. Ct. 2052 (1984), decided after the district court's decision in this case, the Court addressed for the first time a claim of 'actual ineffectiveness' of counsel's assistance at trial, and approved the standard of 'reasonably effective assistance' previously employed by lower federal courts, including this court in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974):
 
 
 12
 A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
 
 
 13
 104 S. Ct. at 2064.
 
 
 14
 With respect to the first 'component,' the Supreme Court noted that the proper standard of attorney performance was that of reasonably effective assistance, and indicated that the standard was an objective one, weighing attorney performance against prevailing professional norms in light of all the circumstances:
 
 
 15
 Judicial scrutiny of counsel's performance must be highly deferential . . .. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that under the circumstances, the challenged action 'might be construed sound trial strategy.'
 
 
 16
 Id. at 2065-66. In making its assessment, the court must keep in mind that the purpose of the sixth amendment guarantee is 'simply to ensure that criminal defendants receive a fair trial,' id. at 2065, by 'mak[ing] the adversarial testing process work in the particular case,' id. at 2066.
 
 
 17
 The Court noted that '[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.' Id. at 2067. The Court also enunciated a 'general requirement that the defendant affirmatively prove prejudice,' id. at 2067.
 
 
 18
 The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
 
 
 19
 Id. at 2068. A totality of the evidence before the judge or jury is taken into account in reaching the necessary decision. Id. at 2069.
 
 
 20
 We find that the district court did not err in ruling that the petitioner was not denied reasonably effective assistance of counsel under these facts and, further, that the petitioner did not demonstrate prejudice sufficient under Strickland to mandate habeas relief. Petitioner mischaracterizes the defense offered in his behalf at trial: petitioner's counsel offered a defense of settled insanity due to prolonged drug usage, which is indeed recognized under Tennessee law. See Harper v. State, 206 Tenn. 509, 517, 334 S.W.2d 933 (1960) (citing Atkins v. State, 119 Tenn. 458, 480, 105 S.W. 353, 358 (1907)). We agree with the district court that offering of the defense of settled insanity was a sound and reasonable trial strategy in these circumstances. Moreover, we hold that the substantial weight of evidence adverse to petitioner would have precluded a finding by the district court that, under the prejudice standard subsequently announced in Strickland, there was 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' 104 S.Ct. at 2068.
 
 II.
 
 21
 Petitioner's second argument on appeal is that the district court erred in finding the state trial court's failure to advise petitioner of his right to represent himself to be harmless constitutional error.
 
 
 22
 Although the record is unclear as to whether petitioner was informed upon his initial encounter with the trial judge of his right to represent himself, the trial judge admitted during the hearing on petitioner's state habeas petition that he failed to advise petitioner of his right to self-representation after petitioner expressed dissatisfaction with appointed counsel and before the trial began. The trial judge stated:
 
 
 23
 If it is grounds for reversal that a trial judge does not inform a defendant that he has a right to fire his counsel and represent himself, then that occurred because I did not tell Mr. Pryor he could represent himself. I did not feel and I don't feel today Mr. Pryor was in a better position to represent himself than [his court-appointed counsel].
 
 
 24
 The district court noted that '[w]hile the petitioner requested appointment of new counsel, at no time did he indicate a desire to represent himself.'
 
 
 25
 In ruling on the petitioner's claim that the state trial judge's failure to inform him of his right to proceed pro se constitutes constitutional error, the district court reviewed the evidence described above and cited the following authority:
 
 
 26
 [A]n 'unequivocal' demand to proceed pro se should be . . . sufficiently clear that if it is granted the defendant should not be able to turn about and urge that he was improperly denied counsel . . .. We can find no constitutional rationale for placing trial courts in a position to be whipsawed by defendants clever enough to record an equivocal request to proceed without counsel in the expectation of a guaranteed error no matter which way the trial court rules.
 
 
 27
 United States v. Altamirano, 633 F.2d 147, 152 n.3 (9th Cir. 1980) (quoting Meeks v. Craven, 482 F.2d 465, 467-68 (9th Cir. 1973)). See also United States v. Conder, 423 F.2d 904 (6th Cir. 1970); United States ex rel. Maldonado v. Denno, 348 F.2d 12 (2d Cir. 1965), cert. denied, 384 U.S. 1007 (1966). The district court went on, however, despite its finding that 'at no time did [petitioner] indicate a desire to represent himself,' to find 'constitutional error,' but found this error harmless.
 
 
 28
 Because the district court's finding of fact that petitioner made no request of the state trial judge to allow him to represent himself is not challenged on appeal as clearly erroneous, the issue on appeal is whether the district court erred in holding that the state trial court did not commit reversible error by failing to advise petitioner of his pro se right sua sponte upon petitioner's assertion of dissatisfaction with his attorneys. While informing a defendant of his right to proceed pro se is the better procedure, Faretta v. California, 422 U.S. 806 (1975); United States v. Plattner, 330 F.2d 271 (2d Cir. 1964), we agree that the trial judge's failure, in the instant case, to inform petitioner of his right to proceed pro se was harmless error. Evidence of the petitioner's guilt was very substantial, and petitioner's inexperience in legal matters could not have improved on his representation by experienced appointed counsel.
 
 
 29
 Although we are not convinced of the correctness of the district court's holding that the state trial court erred in failing sua sponte to advise petitioner of his right to represent himself absent an unequivocal assertion of this right,[1] we find the district court correctly concluded that the error was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18 (1967).
 
 
 30
 For these reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Both of the decisions cited by the district court as supporting a finding of error concerned defendants who clearly and affirmatively demanded the right to represent themselves. See Faretta v. California, 422 U.S. 806, 807 (1975); United States v. Plattner, 330 F.2d 271, 273 (2d Cir. 1964). Petitioner made no such demand, and neither the district court's decision nor our research reveals case law requiring a trial court to advise a defendant sua sponte of his pro se right. Because we hold any error to have been harmless beyond a reasonable doubt, we have no reason to decide this issue