[No. 61046-1.    En Banc.    September 9, 1994.]

THE STATE OF WASHINGTON, *Petitioner*, v. SAMUEL C. GARRETT, *Respondent*.

*David R. Needy, Prosecuting Attorney,* and *K. Garl Long, Chief Criminal Deputy,* for petitioner.

*Rita J. Griffith* of *Washington Appellate Defender Association,* for respondent.

SMITH, J. — The State of Washington seeks review of a decision of the Court of Appeals, Division One, which reversed and remanded for further proceedings Respondent Samuel C. Garrett's second degree child molestation conviction in the Skagit County Superior Court for ineffective assistance of counsel because of misconduct of counsel which, in combination with the trial court's apparent response to antagonistic behavior by defense counsel, prejudiced Respondent's right to a fair trial. We reverse the Court of Appeals.

### STATEMENT OF FACTS

On February 22, 1991, Respondent Samuel C. Garrett was charged by information in the Skagit County Superior Court with one count of second degree child molestation in violation of RCW 9A.44.086 based upon an incident at the

Cascade Mall involving a 13-year-old male person on January 24, 1991.[1]

Respondent retained as counsel Lowell J. Ashbach, Jr., who was joined at trial by Michael W. Smith as co-counsel. Trial began on April 1, 1991 before the Honorable Stanley K. Bruhn. The court heard several motions during an in-chambers conference. Counsel discussed evidentiary and discovery issues.[2] The judge expressed some "irritation" that these matters were first being raised moments before trial.[3] When defense counsel Smith expressed concern that his client would be prejudiced if escorted into the courtroom in chains and a prison uniform,[4] the court remarked:

> What is irritating me Mr. Smith, is the fact that we have got possible screw-ups now. This stuff should have been handled previously. I haven't got time to deal with these things at the last minute, unless there is an awfully critical problem, that could not have been handled previously.[5]

Defense counsel Smith made a motion to exclude witnesses. The prosecuting attorney did not object.[6] Judge Bruhn again expressed concern that the motion was being raised for the first time moments before trial.[7] Defense counsel Smith responded that he only had an interest in getting a fair trial. Judge Bruhn then replied, "[t]he implication is that I don't?"[8]

After a brief recess, the trial resumed in open court and jury selection was begun. The court allowed examination of

[1]Clerk's Papers, at 1.

[2]Pretrial In-Chamber Conference Verbatim Report of Proceedings (Pretrial VRP) (April 1, 1991) (incorrectly dated, April 1, 1990), at 5-9.

[3]Pretrial VRP (April 1, 1991), at 9-10.

[4]Pretrial VRP (April 1, 1991), at 12.

[5]Pretrial VRP (April 1, 1991), at 15-16.

[6]Pretrial VRP (April 1, 1991), at 17.

[7]The court stated: "There is an example of something in the future gentlemen, if you come before me, could have been handled a week ahead of time. When did you know I was going to be the judge? Over a week ago Mr. Ashbach?" Pretrial VRP (April 1, 1991), at 17.

[8]Pretrial VRP (April 1, 1991), at 17.

one prospective juror in chambers with all counsel present. Upon completion of the examination the court denied a defense challenge to that juror for cause.[9]

The trial then resumed in open court and voir dire examination continued. During examination of one prospective juror, defense counsel Smith asked him where he parked when he went to the Cascade Mall.[10] The prosecuting attorney objected and asked for a side bar conference.[11] After the side bar conference, Judge Bruhn sustained the objection and advised defense counsel Smith he could state his objection to the ruling on the record at a later time.[12]

When his turn came to conduct voir dire examination of three remaining prospective jurors, defense counsel Smith said he had no further questions.[13] After the State accepted the panel as constituted, the defense exercised one peremptory challenge against the juror who had been examined in chambers.[14] Another prospective juror was seated and the defense declined to examine.[15] The State again accepted the jury and defense counsel Smith accepted the jury, stating "Mr. Garrett informs me that he is satisfied with the 12 people on the jury to try his case."[16]

The prosecuting attorney made his opening statement to the jury and defense counsel Smith elected to follow with his opening statement.[17] During his opening statement, Mr. Smith said the Defendant would be testifying.[18] He attempted in his statement to refer to the criminal history of

---

[9]Pretrial VRP (April 1, 1991), at 62-63.

[10]The offense allegedly took place in the parking lot of Cascade Mall.

[11]Pretrial VRP (April 1, 1991), at 93.

[12]Pretrial VRP (April 1, 1991), at 93.

[13]Pretrial VRP (April 1, 1991), at 97, 100, 103.

[14]Pretrial VRP (April 1, 1991), at 104.

[15]Pretrial VRP (April 1, 1991), at 107.

[16]Pretrial VRP (April 1, 1991), at 107.

[17]Pretrial VRP (April 1, 1991), at 120.

[18]Pretrial VRP (April 1, 1991), at 121.

the juvenile alleged victim. The court sustained an objection, but apparently off the record since Mr. Smith continued to demand a ruling on the record. The court went back on the record, admonished the jury to not discuss the case and to not visit Cascade Mall to gather evidence, and then recessed. The court later reconvened and, out of the presence of the jury, Mr. Smith stated his objection on the record.[19] When reminded by the court to be careful what he said, Mr. Smith replied *"[y]ou can't tell me what to say."*[20]

Out of the presence of the jury, the court asked defense counsel for legal authority to support their argument that evidence of the juvenile alleged victim's criminal history would be admissible. Defense counsel Smith told the court he could find "no more than the comments that are at the end of the evidence rules" and that to him "the element is so clear that it needs no briefing". He then stated *"[i]f I come in here with every evidence rule and everything there is with a brief, I might as well just bring my whole law library in here."*[21] Defense counsel Smith complained about the court's "control" of the trial. The court attempted to respond,[22] after which Mr. Smith stated, *"[e]verything is 'why didn't we, why didn't we,' 'why didn't the defendant?' Why didn't the defendant? The prosecuting attorney has had this defendant in jail ever since he was arrested. Mr. Ashbach made one good record at the omnibus when he tried to get these things, and all we get at this point, up until now is nothing, and you see what happened. Nothing is provided."*[23] Judge Bruhn then agreed to review the transcript from the omnibus hearing and recessed court.

When court reconvened the next morning on April 2, 1991 for the in-chambers conference, the clerk of the court, both defense counsel and the prosecuting attorney were present.

---

[19]Pretrial VRP (April 1, 1991), at 131-35.

[20](Italics ours.) Pretrial VRP (April 1, 1991), at 133.

[21](Italics ours.) Pretrial VRP (April 1, 1991), at 151-52.

[22]Pretrial VRP (April 1, 1991), at 157-59.

[23](Italics ours.) Pretrial VRP (April 1, 1991), at 164.

Discussion began with the question of admissibility of the juvenile alleged victim's criminal history and the prosecuting attorney's failure to provide·defense counsel with that history. When the court indicated it did not know what was ordered in the omnibus proceeding, Mr. Smith then stated, *"I don't see how you could even rule on anything when you don't know what you are ruling on. Sir, what if the kid had the exact same thing happen three other times? Can you state right now he doesn't? What if he did this three other times?"*[24]

The court then asked defense counsel Smith for "proof . . . to establish evidence of character and reputation". Mr. Smith replied, *"[r]ead 608"*. The court responded, "[t]hat doesn't tell you how you establish it in court". Mr. Smith then responded, *"[y]eah, it does. Read 608. It says it can be done."*[25]

Judge Bruhn asked the prosecuting attorney why he had not provided defense counsel with information concerning the juvenile alleged victim's criminal history. The prosecutor replied that they ran a computer check and there was no criminal history. He repeated that defense counsel Ashbach was told by the juvenile alleged victim that he had a criminal history, and Mr. Ashbach indicated to the prosecutor they had subpoenaed the probation officer who could testify concerning the history.[26] Defense counsel Smith accused the prosecuting attorney of trying to hide evidence, but the prosecutor responded that Mr. Ashbach specifically did not want to interview the probation officer until the day of trial. Mr. Ashbach then stated to the prosecuting attorney, *"You are a bald faced liar. I want the record to reflect Garl Long is a bald faced liar. He is a liar and I'm not going to participate in this."*[27]

The court brought the probation officer into the in-chambers conference to testify under oath.[28] The court granted

---

[24](Italics ours.) Verbatim Report of Proceedings (VRP) (April 2, 1991), at 6-7.

[25](Italics ours.) VRP (April 2, 1991), at 7.

[26]VRP (April 2, 1991), at 7-11.

[27](Italics ours.) VRP (April 2, 1991), at 11-12.

[28]VRP (April 2, 1991), at 16-26.

the defense a printout of the juvenile alleged victim's criminal history, but cautioned that the information remained confidential and privileged.[29]

In his opening statement defense counsel Smith commented about the juvenile alleged victim's criminal history. Out of the presence of the jury, the court stated agreement with the prosecuting attorney that it is unethical and unprofessional for a lawyer to make a statement when the lawyer does not know what the record shows. Whereupon Mr. Smith responded to the court, *"[a] pretty good idea isn't good enough? I'm not going to let him hide stuff."*[30]

The court then remarked that counsel does not "go out and taint a jury with information that isn't accurate or you don't even know about. That is unethical." Mr. Smith then responded, *"[i]f we are unethical, let me tell you about judicial misconduct. This is in answer to a question that was asked awhile ago. In a way I thought you might have been kidding when you said, 'Why isn't this a guilty plea?' That is what you said yesterday morning when we were all in this thing."*[31]

The court recessed and reconvened in open court with the jury present. Mr. Smith was asked to complete his opening statement, whereupon he began with the statement to the jury that, *"[t]he court has directed me not to go into this man's — ."*[32] Several objections were made to this and other statements by Mr. Smith. The court sustained them, stating to Mr. Smith, "[t]hey are improper. This is merely an opening statement and that is all." Mr. Smith then said to the court, *"[d]o you want to make it for me? I have a witness, Mel Mocabee, who is going to testify the lot is lit up with 1,000 watt bulbs. Do you not want to hear that either?"*[33]

---

[29]VRP (April 2, 1991), at 30.

[30](Italics ours.) VRP (April 2, 1991), at 31.

[31](Italics ours.) VRP (April 2, 1991), at 31.

[32](Italics ours.) VRP (April 2, 1991), at 37.

[33](Italics ours.) VRP (April 2, 1991), at 38.

Defense counsel Smith concluded his opening statement. The jury was excused during proceedings on another preliminary matter.[34] The jury was returned to the courtroom and the State began presentation of its case. During testimony by the juvenile alleged victim, and in the presence of the jury, Judge Bruhn asked whether the police report was consistent with the young man's testimony. Mr. Smith then stated to the court, *"I don't like that, whether or not it is consistent."*[35] Defense counsel objected to the prosecutor allowing the witness to review a written statement he made to the police.[36] The court excused the jury and the juvenile alleged victim to resolve this matter.[37] Counsel discussed issues regarding the juvenile alleged victim's probation status and criminal history. Defense counsel Smith accused the prosecutor of violating a court order restricting use of the juvenile alleged victim's criminal history. The court responded that he did not wish to hear "any more criticism of other counsel" and that he had said nothing before when Mr. Smith had "accused Mr. Long of improper conduct". Mr. Smith then said to the court, *"[y]ou accused me in chambers. Is it different? I showed you information."*[38] The jury returned to the courtroom and the State continued with its case in chief.

---

[34]VRP (April 2, 1991), at 41. This matter concerned the testimony of a state witness who was manager of a video arcade at Cascade Mall. He had been discharged for alleged embezzlement. The prosecuting attorney learned the case had been referred to his office, but determined that information concerning a pending charge would not be admissible in this case. The trial court ruled there would be no reference, questions or comments concerning any pending charges against the witness. VRP (April 2, 1991), at 47. Respondent Garrett assigned error to this ruling. The Court of Appeals agreed, holding that the trial court's ruling was erroneous under *Davis v. Alaska*, 415 U.S. 308, 318, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974). Although we do not agree with that interpretation, the issue is not before us in this case.

[35](Italics ours.) VRP (April 2, 1991), at 127.

[36]VRP (April 2, 1991), at 128.

[37]VRP (April 2, 1991), at 129.

[38](Italics ours.) VRP (April 2, 1991), at 136-37.

On the third day of trial, out of the presence of the·jury, the court and defense counsel continued their pattern of verbal exchange:[39]

MR. SMITH: *He's not going to give any testimony today on the witness stand, I think he's getting a little flavor or a little tenor of this trial.*

THE COURT: I don't need those kinds of remarks, Mr. Smith. Just state facts of [*sic*] law.

In open court, after the State rested, the defense then presented its case.[40] Prior to calling their first witness and out of the presence of the jury, defense counsel advised the court that the defendant (Respondent Garrett) would not be testifying. Defense counsel stated several reasons for that decision, but particularly[41] Mr. Garrett's belief *that the trial judge was prejudiced against him and his counsel.*

In the presence of the jury, defense counsel called two witnesses and then rested.[42] *The court addressed the jury:*[43]

All right, ladies and gentlemen. How about that? We have concluded the case. So now the hard work comes for you people at least. First of all ladies and gentlemen, the defendant has a constitutional right not to take the stand and *not to testify against himself* and he has elected so to do and I am impressing upon you to remember that and not draw any inferences of any sort from the fact that he has not testified. It doesn't mean — it is not meaningful at all in this case.

(Italics ours.)

The court reconvened in chambers. Out of the presence of the jury, defense counsel Smith moved for a mistrial on the grounds of judicial prejudice against the defendant (Respondent Garrett) and defense counsel and because *Judge Bruhn's*

---

[39](Italics ours.) VRP (April 4, 1991) (incorrectly dated April 4, 1990), at 10. While the court reporter indicated the date as April 4, 1990, it is obvious from the documents in the file that this occurred on April 3, 1991. See Clerk's Papers, at 32.

[40]VRP (April 4, 1991), at 46.

[41]VRP (April 4, 1991), at 31-38.

[42]VRP (April 4, 1991), at 66.

[43]VRP (April 4, 1991), at 66-67.

*instruction to the jury was "extremely inappropriate".*[44] The motion was denied.[45]

The court and counsel further discussed and agreed upon proposed jury instructions. Before the jury returned to the courtroom, the prosecuting attorney asked the court to caution defense counsel to limit closing argument to the evidence.[46] Mr. Smith replied *"[o]ther than the fact that the prosecuting attorney is not going to admonish me on how to make a closing statement or what words I use, if I want to call the kid a hustler and characterize his character as a hustling individual I can do it."* The court told him, "[n]o, you can't", whereupon Mr. Smith said to the court *"[y]ou're not going to tell me what words I can use in talking to a jury."*[47]

During closing argument for the defense, Mr. Smith, in an apparent effort to ameliorate his crude behavior, stated:[48]

Ladies and gentlemen, as you can see these, I can tell you that child abuse cases are very difficult to defend and I want to get a little personality thing out of the way first before we talk about this. I didn't ask for this kind of system, and neither did the prosecutor nor the defendant nor the judge, but we call it an adversarial system. *An adversarial system means that it's almost like war. You keep at logger heads where you keep pushing and you keep going and you keep fighting and hope out of that that the truth is going to come out. During this trial, that is what's been going on. Push and pull. Because of the nature of that, you may see at times that I get short with the judge or say things like that which I can see smiles on your faces or he is short with me or the prosecutor or whatever.* That's part of the system. It's part of the system and *I apologize now to Judge Bruhn for any comments that I have made or any actions I may have taken. It certainly was not meant in disrespect for him.*

---

[44](Italics ours.) VRP (April 4, 1991), at 71.

[45]VRP (April 4, 1991), at 73. The Court of Appeals noted that Respondent Garrett assigned error to denial by the trial court of a mistrial and to the court's use of the words "testify against himself". However, the Court of Appeals did not address this issue because its decision rested on other grounds.

[46]VRP (April 4, 1991), at 77-78.

[47]VRP (April 4, 1991), at 78-79.

[48]VRP (April 4, 1991), at 90-91.

> *Likewise, I think it's fair to say that anything that was going on back the other way is about the same thing. It's part of the battle.*

(Italics ours.)

After the jury retired for deliberation, the prosecuting attorney noted for the record:[49]

I think that was one of the most improper closing arguments that I've ever heard. . . .

He stated his personal opinions throughout the argument and he continually referred to matters not in evidence. He gave his own opinion even to the extent of testifying as an expert on sexual molesters. It was a totally improper closing argument. I requested terms once before in this case and I think they would be appropriate for that closing argument. Frankly, I think I would be entitled to a mistrial, should I decide to ask for one, but I'm not going to do that. I would like to see this case concluded rather than retried, but that has to be the most flagrantly improper closing argument that I've ever heard.

Defense counsel Smith declined to respond, but the court then stated:

Well, I think I will say this. I think Mr. Smith has stepped over the line badly both on opening and closing. And if you had moved for a mistrial, I would have given that consideration but you have not so it won't occur. I think Mr. Smith, your effort to ingratiate yourself, in a [sic] the sense of the word, I guess, with the jury, in view of what I gather, you perceived the jurors or what you thought the jurors perceived in view of your conduct, didn't sell very well. This isn't what happens in the heat of battle. This is not the adversary system as it is known and practiced by professional people. I'm not going to sanction Mr. Smith, he deserves it, but I'm not going to do it and we'll let it go at that. We'll see what comes of this case.

On April 3, 1991, the jury found Samuel C. Garrett "guilty" of second degree child molestation.[50]

On May 13, 1991, Judge Bruhn recused himself from sentencing the defendant (Respondent Garrett).[51] On July 3, 1991, the Honorable Richard J. Thorpe, visiting judge from

---

[49]VRP (April 4, 1991), at 117-19.

[50]Clerk's Papers, at 32.

[51]VRP (May 13, 1991), at 16.

Snohomish County, sentenced Respondent Garrett to 116 months for second degree child molestation.[52]

On May 17, 1993, the Court of Appeals, Division One, reversed the conviction and remanded for retrial because of ineffective assistance of counsel which, in combination with the trial court's apparent response to antagonistic behavior by defense counsel, prejudiced Respondent Garrett's right to a fair trial. On October 12, 1993, the Court of Appeals commissioner denied Mr. Garrett's motion for release pending review.

On April 7, 1994, this court granted the State's petition for review. On May 3, 1994, Respondent Garrett filed a motion to strike portions of the State's petition for discretionary review. The motion was "passed on the merits" and considered during oral argument.

### QUESTION PRESENTED

The sole question presented is whether a jury conviction for second degree child molestation should be reversed for ineffective assistance of counsel because of misconduct of counsel which, in combination with the trial court's apparent response to antagonistic behavior by defense counsel, prejudiced Respondent Samuel C. Garrett's right to a fair trial.

### DISCUSSION

In its petition for review, the State challenges the Court of Appeals decision only on ineffective assistance of counsel.[53]

### Motion to Strike

Respondent Garrett moved to strike portions of the State's Petition for Discretionary Revas indicated below:

*Garrett was an experienced participant in the criminal justice system. He has three prior convictions for similar offenses. Each*

---

[52]Clerk's Papers, at 42.

[53]The Court of Appeals did not address Respondent's claim that the sentencing judge erred in considering his prior convictions in calculating his offender score. See Br. of Appellant. Neither party challenges that omission.

*offense involved a separate prosecution. In addition there is a warrant for his arrest on a fourth offense.*[54]

■ Under CrR 7.1(c) counsel for the defense is required to notify opposing counsel and the court "of any part of the presentence report that will be controverted by the production of evidence." Defense counsel did not object in a timely manner to identical information in the presentence report. Thus the motion to strike this language from the State's petition for discretionary review is not timely and is denied.

*These four prosecutions took place in Canada. It appears Garrett came to the United States to avoid the Canadian warrant.* [55]

This statement is also subject to CrR 7.1(c). Defense counsel did not object in a timely manner. However, the State's claim that Respondent had four prosecutions admittedly was in error. In fact there were only three. This was corrected prior to trial during an in-chambers conference with defense counsel and the prosecuting attorney.[56] The motion to strike is denied.

Respondent Garrett also moved to strike the State's characterization of the juvenile victim as a *"developmentally handicapped child"*.[57] Defense counsel did not object to the State's line of questioning concerning the juvenile victim's educational background and his attendance at "Skagit Discovery".[58] The defense also did not cross-examine the juvenile victim on this issue, and cannot now object to the State's characterization of him in its Petition for Discretionary Review as a "developmentally handicapped child". The motion to strike is denied.

---

[54](Italics ours.) Pet. for Discretionary Review, at 10.

[55](Italics ours.) Pet. for Discretionary Review, at 10 n.2.

[56]See Clerk's Papers Requested by Washington Appellate Defender Association, at 19; *see also* Presentence Investigation; Clerk's Papers Requested by Plaintiff/Respondent, at 63-64.

[57](Italics ours.) Pet. for Discretionary Review, at 11.

[58]VRP (April 2, 1991), at 79.

*Even if the State can find the witnesses and convince them to cooperate again, double jeopardy may prevent a retrial.*[59]

The State's interpretation of the law is consistent with *United States v. Altamirano.*[60] In *Altamirano*, the question of double jeopardy was not raised because the court determined the defendant had not been prejudiced by his counsel's unprofessional conduct.[61] However, the court recognized "a strong possibility that double jeopardy claims w[ould] be raised in subsequent cases where the claim of inadequate assistance of counsel is raised successfully on appeal."[62] Thus, the State is correct in its assertion that it might be prevented from retrying the case if the decision of the Court of Appeals is upheld. The motion to strike is denied.

## Standard of Review

■ The question whether an attorney renders ineffective assistance of counsel when counsel violates the Rules of Professional Conduct is one of law.[63]

## Ineffective Assistance of Counsel

■ Respondent Garrett claims he was deprived of his Sixth Amendment right to effective assistance of counsel because of his attorneys' conduct at trial. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."[64]

---

[59](Italics ours.) Pet. for Discretionary Review, at 12.

[60]633 F.2d 147, 151 n.2 (9th Cir. 1980).

[61]*Altamirano*, at 152.

[62]*Altamirano*, at 151 n.2.

[63]*Eriks v. Denver*, 118 Wn.2d 451, 458, 824 P.2d 1207 (1992) (citing *Burnette v. Morgan*, 303 Ark. 150, 794 S.W.2d 145 (1990); *McCall v. District Court*, 783 P.2d 1223 (Colo. 1989); *Attorney Grievance Comm'n v. Korotki*, 318 Md. 646, 569 A.2d 1224 (1990); *State v. Romero*, 563 N.E.2d 134 (Ind. Ct. App. 1990); *Bonanza Motors, Inc. v. Webb*, 104 Idaho 234, 657 P.2d 1102 (Ct. App. 1983)) *see also Mannhalt v. Reed*, 847 F.2d 576, 579 (9th Cir. 1988) (citing *Butcher v. Marquez*, 758 F.2d 373, 376 (9th Cir. 1985)).

[64]*Strickland v. Washington*, 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).

The State contends there should be no finding of ineffective assistance of counsel because the conduct of Respondent's attorneys constituted intentional and deliberately calculated trial tactics.

In *Strickland v. Washington,* in an opinion by Justice Sandra Day O'Connor, the United States Supreme Court established a 2-part test for determining whether counsel's assistance at trial or sentencing was ineffective.[65] The Court stated:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.[66]

This court adopted the *Strickland* test in *State v. Thomas*[67] to "ensure a fair and impartial trial."[68] The court in *Thomas* stated:

> The *Strickland* test requires a showing that counsel's representation fell below an objective standard of reasonableness based on consideration of all of the circumstances. *Strickland,* at 688. Regarding the first prong, scrutiny of counsel's performance is highly deferential and courts will indulge in a

---

[65]466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Some commentators criticize the *Strickland* 2-prong test because it does not distinguish capital cases from other criminal cases and because "while paying lip service to the importance of the sixth amendment right to effective assistance of counsel, it creates an almost insurmountable hurdle for defendants claiming ineffective assistance." *See* Martin C. Calhoun, Notes & Comments, *How to Thread the Needle: Toward A Checklist-Based Standard for Evaluating Ineffective Assistance of Counsel Claims,* 77 Geo. L.J. 413, 427 (1988); Helen Gredd, Comment, Washington v. Strickland: *Defining Effective Assistance of Counsel at Capital Sentencing,* 83 Colum. L. R. 1544 (1983).

[66]*Strickland,* at 687.

[67]109 Wn.2d 222, 743 P.2d 816 (1987).

[68]*Thomas,* at 225 (citing *State v. Osborne,* 102 Wn.2d 87, 99, 684 P.2d 683 (1984); *State v. Ermert,* 94 Wn.2d 839, 849, 621 P.2d 121 (1980)).

strong presumption of reasonableness. *See Strickland,* at 689. To meet the requirement of the second prong defendant has the burden to show that

> there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *A reasonable probability is a probability sufficient to undermine confidence in the outcome.*[69]

In *Thomas* the petitioner claimed she was denied effective assistance of counsel because her assigned trial counsel failed to competently present a diminished capacity defense based on voluntary intoxication to a charge of attempting to elude a police vehicle.[70] This court concluded that the petitioner in *Thomas* was denied effective assistance of counsel because trial counsel failed to offer a critical jury instruction which would have "better enabled her counsel to argue the . . . theory of the case"[71] and the jury would have had a correct statement of the law if the instruction had been given.[72] We held that petitioner was prejudiced because "[a] reasonably competent attorney would have been sufficiently aware of relevant legal principles to enable him or her to propose an instruction based on pertinent cases."[73] We concluded in that case that "defense counsel's representation fell below an objective standard of reasonableness."[74]

In this case, however, defense counsel consciously and deliberately refused to examine the last four prospective jurors and accepted the jury as constituted. The record reflects that his counsel zealously and aggressively represented Respondent Garrett throughout the trial. The entire record demonstrates that Respondent Garrett did have effective assistance of counsel and was not prejudiced in his right to a fair and impartial trial even though his counsel engaged in gross disrespectful behavior toward the

---

[69](Citation omitted.) *Thomas,* at 226.

[70]*Thomas,* at 223.

[71]*Thomas,* at 227.

[72]*Thomas,* at 228.

[73]*Thomas,* at 229.

[74]*Thomas,* at 232 (citing *Strickland* at 688).

court. The response of the court was gentle and restrained, even though defense counsel seemingly sought to provoke the court to harsher response.

■ When courts analyze claims of ineffective assistance of counsel, "[t]here is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in all significant decisions made."[75] In addition, this court will not find ineffective assistance of counsel if "the actions of counsel complained of go to the theory of the case or to trial tactics."[76]

There is no claim in this case that defense counsel committed errors in their representation of Respondent Garrett. The United States Supreme Court in *Strickland* clearly established the rule that:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. *United States v. Morrison*, 449 U.S. 361, 364-65, [66 L. Ed. 2d 564, 101 S. Ct. 665, 667-68] (1981). The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.[77]

In *United States v. Altamirano, supra,* the United States Court of Appeals for the Ninth Circuit found that counsel's conduct was not so prejudicial that it would require reversal of defendant's conviction for ineffective assistance of counsel.[78] The behavior of defense counsel in that case was similar to the behavior of counsel in this case. The court provided examples of defense counsel's unprofessional conduct, which included: insistence on rearguing points already

---

[75]*Butcher v. Marquez,* 758 F.2d 373, 376 (9th Cir. 1985) (citing *Strickland,* at 690).

[76]*State v. Renfro,* 96 Wn.2d 902, 909, 639 P.2d 737 (citing *State v. Ermert,* 94 Wn.2d 839, 621 P.2d 121 (1980)), *cert. denied,* 459 U.S. 842 (1982); *see also State v. Mode,* 57 Wn.2d 829, 360 P.2d 159 (1961).

[77]*Strickland,* at 691-92.

[78]*Altamirano,* at 153.

ruled on by the trial court; argument with the trial judge; confrontation with the trial judge concerning the proper manner to subpoena witnesses; inappropriate remarks in the presence of the jury; heated exchange with the trial judge over cross examination of a witness; and remarks in the presence of the jury denigrating the government's proffered evidence. The court observed that:

> Obduracy may reflect conscious unprofessional conduct as well as involuntary ineptitude. The two should be kept distinct even though admittedly both may prejudice the client. To equate the two would provide an improper incentive to use unprofessional conduct as a means to secure mistrials or reversals of convictions having as the end the delay of a valid conviction or the possible escape from prosecution. Obviously no bright line can be drawn between conscious unprofessionalism and incorrigible incompetency; each represents the opposing end of a spectrum in which at the center is ambiguous conduct that exhibits characteristics of both.[79]

Although the court determined defense counsel was "confusing and unprofessional in many instances . . . [and] not highly competent",[80] it concluded that his "unprofessional acts when reviewed in the context of the entire trial did not deprive [defendant] of a fair trial."[81] The court in *Altamirano* was primarily concerned with whether deliberate misconduct by defense counsel could constitute ineffective assistance of counsel which would deny a defendant the constitutional right to a fair trial.

In this case, the difficulties began on the first day of trial and continued throughout. Most of the utterances by defense counsel were confrontational. The record is rife with instances of discourteous and disrespectful behavior by defense counsel toward the court. We have cited only a selection of those instances in this opinion. From the entire record it can only be concluded that defense counsel was disrespectful, abusive, antagonistic and insulting in total disregard for the respect due the court. With the exception of ·

---

[79]*United States v. Altamirano,* 633 F.2d 147, 150-51 (9th Cir. 1980).

[80]*Altamirano,* at 153.

[81]*Altamirano,* at 153.

a few instances, the verbal exchanges between counsel and the court occurred out of the presence of the jury.[82] Any responsive remarks by the trial judge were not "reasonably calculated to influence the judgment of the jury".[83]

Because of the unprofessional behavior, of both defense counsel, reflected upon the record in this case, we refer the matter to the Washington State Bar Association for appropriate disciplinary investigation and any proceedings which may follow.

Under Rule of Professional Conduct 3.5(c), a lawyer shall not "[e]ngage in conduct intended to disrupt a tribunal." Under RPC 8.4(d), it is professional misconduct for a lawyer to "[e]ngage in conduct that is prejudicial to the administration of justice . . .." Upon admission to practice before this court, members of the Washington State Bar take an oath of attorney which includes the words "I will maintain the respect due to the courts of justice and judicial officers" and "I will abstain from all offensive personalities. . . .."

The behavior of defense counsel in this case, particularly Michael W. Smith, was grossly unprofessional by any measure. He was disdainful in his behavior toward the court. Selected portions recited in this opinion and the entire record can lead only to the conclusion that defense counsel Smith was boorish, contemptuous, discourteous, disrespectful, insolent, obdurate, obnoxious, offensive, rude and uncouth. All judicial officers in this state are entitled to respect from lawyers admitted to practice in our courts. The trial judge in this case was entitled to no less.

## SUMMARY AND CONCLUSIONS

The Court of Appeals reversed Respondent Samuel C. Garrett's conviction for second degree child molestation because of ineffective assistance of counsel which, when combined with the trial court's apparent response to antago-

---

[82]The court inquired whether the testimony of the juvenile alleged victim was consistent with his report to the police, and defense counsel Smith responded with a curt remark in the presence of the jury.

[83]See State v. Levy, 8 Wn.2d 630, 647, 113 P.2d 306 (1941).

nistic behavior by defense counsel, prejudiced Respondent's right to a fair trial. However, with a few minor exceptions, the verbal exchanges between defense counsel and the court occurred out of the presence of the jury. It cannot be said that Respondent was prejudiced in his right to a fair trial based upon matters which were not brought to the attention of the jury.

There is nothing in the record in this case to suggest that defense counsel were other than skillful and competent in their representation of Petitioner Garrett. The critical concern is their gross unprofessional conduct particularly toward the court. Lawyers in this state are officers of the court and must conduct themselves in a manner consistent with the responsibilities of that calling.

It is apparent from the record in this case that defense counsel skillfully determined as a deliberate trial tactic to push the trial court beyond the limits of tolerance either to force a mistrial or to provide a perverse form of "insurance" on a claim of ineffective assistance of counsel in the event of conviction.[84]

Under the test established by the United States Supreme Court in *Strickland v. Washington, supra,* and adopted by this court in *State v. Thomas, supra,* and under *United States v. Altamirano, supra,* we conclude that Respondent Samuel C. Garrett was not denied his Sixth Amendment right to effective assistance of counsel because of the unprofessional conduct of his counsel.

We therefore reverse the decision of the Court of Appeals which reversed Respondent's jury conviction for second degree child molestation.

ANDERSEN, C.J., and BRACHTENBACH, DOLLIVER, and DURHAM, JJ., concur.

---

[84]On August 7, 1992, the trial judge stipulated to admonishment by the Commission on Judicial Conduct for reasons stated in a report in the Bar News. No other information is available on this. See Washington State Bar News vol. 46, no. 10, at 37 (Oct. 1992).

UTTER, J. (concurring in part, dissenting in part) — I cannot agree with the dissent that the conduct of the trial judge rose to the level of the court's actions in *State v. Levy*, 8 Wn.2d 630, 113 P.2d 306 (1941). I, therefore, agree with the majority's disposition of that portion of the case. I do, however, agree with the dissent that the refusal by counsel to brief the issue of whether the victim's juvenile criminal history was admissible for impeachment and counsel's failure to provide briefing on the question of whether they could explore possible felony theft charges regarding the State's key witness were grounds for reversal of the conviction for ineffective assistance of counsel. Counsel's misconduct during trial and failure to properly represent his client raise serious questions regarding his continuing fitness to practice law.

GUY and JOHNSON, JJ., concur with UTTER, J.

MADSEN, J. (dissenting) — I must dissent because I believe that the majority both ignored the facts of the case before us and misapplied the relevant law. The facts and the law instead require that we affirm the Court of Appeals which properly recognized that the circumstances of this case as a whole denied the Defendant his right to a fair trial.

Unfortunately, the majority has allowed the conduct of counsel to distract it from the real issues. Instead of focusing on the Defendant's right to a fair trial, the majority focuses on the disrespect which defense counsel demonstrated toward the judge, unfairly downplaying the conduct of the trial judge in front of the jury and ignoring the Defendant's nonparticipation in the conduct of his counsel and at least two instances of deficient representation that were cited by the Court of Appeals.

Unlike the majority, the Court of Appeals, and even the trial judge, understood the extent to which his conduct contributed to the events which transpired in this criminal trial. The trial judge correctly accepted admonition for his

part from the Commission on Judicial Conduct. See Washington State Bar News, 37 (Oct. 1992). The Court of Appeals likewise recognized that the behavior of the attorneys, coupled with the inappropriate response by the judge, deprived the Defendant of the effective assistance of counsel. Judge Kennedy, joined by Judges Agid and Grosse, correctly determined that this was a battle between counsel and the court, waged, in part, before the jury. As Judge Kennedy stated:

> This case requires reversal, not only because the performance of Garrett's two attorneys was shockingly unprofessional and, in at least one instance, obdurately inept, but also because the trial judge was unable to keep his resulting anger and hostility toward defense counsel from spilling over into the court room and the jury clearly became aware of that anger and hostility.

*State v. Garrett*, unpublished opinion noted at 71 Wn. App. 1077, slip op. at 29 (1993).

The Court of Appeals also recognized that the outrageousness of defense counsel's conduct, particularly when being reviewed by judges, could easily draw the focus of the reviewing court from the legal issues presented. Judge Kennedy was on target when she made the following observation:

> Moreover, we believe that attorney discipline is better handled by our trial courts and by the Washington State Bar Association, subject ultimately to review and action by our State Supreme Court, than by means of turning an appellate cold shoulder to a plea for reversal in the face of clear prejudice to a defendant's right to a fair trial.

*Garrett*, slip op. at 37.

Sadly, a majority of this court has elected to turn a cold shoulder on the prejudice to the Defendant's right to a fair trial in this case. Although the majority recognizes that the disrespectful and unprofessional behavior of counsel provoked response from the judge, the majority refuses to draw the only reasonable conclusion — that the Defendant was deprived of a fair trial. The majority's error truly comes to light upon closer examination of the trial judge's role in the drama, the incidents between defense counsel and the trial judge that occurred before the jury, the proper standard of

review, the fact that the Defendant did not participate or acquiesce in the actions of defense counsel, and two other instances of deficient performance on the part of defense counsel.

## I

### THE TRIAL JUDGE'S ROLE

The majority's review of the record in this case is off balance. This is clearly demonstrated by the majority's word choices when describing the conduct of the trial judge and defense counsel. The trial judge's conduct is described as "gentle and restrained". Majority, at 520. In contrast, defense counsel's conduct is described as "boorish, contemptuous, discourteous, disrespectful, insolent, obdurate, obnoxious, offensive, rude and uncouth". Majority, at 522. A balanced review of the record, however, reveals that the judge's conduct contributed significantly to the hostility which plagued this proceeding. The majority glosses over this fact so as to further its real concern here — that defense counsel failed to show proper respect for the court. This focus of the majority is most succinctly summarized by its following statement:

> All judicial officers in this state are entitled to respect from lawyers admitted to practice in our courts. The trial judge in this case was entitled to no less.

Majority, at 522.

This monochromatic view of the dynamics involved in a lawsuit, and this one in particular, does neither the individuals involved, nor the legal profession at large, justice. Although distinguished from the attorneys who practice before them by black robes, judges and attorneys alike are no more than human beings of whom we expect professional conduct when operating in the sphere of the law. The human beings in this case lost sight of their professional responsibilities and allowed their personal feelings, frustrations, impatience, and anger to rule their conduct. Even though the conduct of counsel in this case was grossly unprofessional, this court must recognize the responsibility of the judge as well as counsel.

Respect flows in two directions. The judge sets the tone in any proceeding. As the Court of Appeals correctly noted, the trial judge has an obligation to maintain order and decorum in proceedings before the court. *Garrett*, slip op. at 33 n.14 (citing CJC 3A(2) and (3)). Moreover, judges should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom judges deal in their official capacity, and should require similar conduct of lawyers, and of the staff, court officials, and others *subject to their direction and control*. (Italics mine.) CJC 3A(3). It is the judge who has the power and authority in the courtroom. Irritation and impatience displayed by the judge will foster disrespect. If the judge fails to use appropriate measures to control and, instead, resorts to verbal exchanges, the tenor of the proceeding will necessarily deteriorate as clearly occurred in this case.

The stage was set for this unfortunate drama at the omnibus hearing approximately 1 week earlier, when defense counsel asked the court to order the prosecutor to turn over items of discovery. The judge presiding determined that the prosecutor was not then in possession of the requested items and declined to set a date for completion of discovery. Among the items requested at omnibus were the victim's juvenile criminal record, photos taken of the scene, and a report prepared by store security. Defense counsel complained that he did not wish to receive discovery on the day of trial.

When trial began a week later discovery had not been completed. Defense counsel attempted to bring this to the judge's attention at an in-chambers pretrial conference. The judge immediately became impatient and irritable. He repeatedly blamed counsel, particularly defense counsel, for not dealing with the issues earlier. He complained that counsel were wasting his time and that unresolved discovery issues were not his problem. When defense counsel explained that the issues were being raised to ensure a fair trial the judge took offense stating, "[t]he implication is that I don't?" Verbatim Report of Proceedings, at 17 (Apr. 1, 1991)

(incorrectly dated April 1, 1990). Thus, it was the judge who set the tone for this 3-day ordeal.[85]

By the end of the first day the level of conduct by all the parties had deteriorated. Defense counsel wanted the court to recess the jury so that he could make a record of a sidebar ruling sustaining an objection to a line of questions on voir dire. The court declined to do so. Defense counsel then elected not to examine the last four venirepersons. Immediately following, in opening statement, defense counsel mentioned a portion of the victim's criminal history, a prior assault and trespass, despite the fact that he had not received the victim's criminal history. Pursuant to an objection by the prosecutor, the court recessed to chambers to discuss these developments. An accusation of unethical conduct was made by the prosecutor, countered by defense counsel's accusation that the prosecutor deliberately withheld the criminal record. Defense counsel also accused the judge of making disparaging remarks about a potential juror and complained about the judge's practice of conducting unrecorded sidebars. The judge took offense, responding that defense counsel should be "awfully careful" of his phrasing. Verbatim Report of Proceedings (Apr. 1, 1991), at 133. Regarding the sidebar complaint, the judge said, "I guess the inference I can draw, Mr. Smith, is that you think this court is pulling something shady or sneaky over here at the side bar and you're getting some bad rulings and you want to be able to appeal". Verbatim Report of Proceedings (Apr. 1, 1991), at 158.

The second day was worse than the first. The defense had subpoenaed the victim's probation officer to testify regarding the victim's criminal history. It is clear from the record that although the prosecutor had spoken earlier with the officer and was aware that she had these records he declined to advise her regarding disclosure to the defense. While defense

---

[85]As the Court of Appeals pointed out, the judge's irritation was, in part, misdirected since the prosecutor did not fulfill his responsibility regarding discovery. As the court further noted, however, there is no excuse for the unprofessional conduct later demonstrated by defense counsel.

counsel had subpoenaed the probation officer, counsel had not spoken with her prior to her appearance in court. The judge became irritated with defense counsel and said "I think that is our problem. This record ought to be clear. You two lawyers have not prepared the case properly". Verbatim Report of Proceedings, at 10 (Apr. 2, 1991). This remark is followed by many pages of transcript which can only be described as bickering between defense counsel and the judge.

On the last day of trial, defense counsel told the judge that the Defendant would not be testifying. Among other reasons, defense counsel cited the following:

> The defendant believes that the tone of voice that the trial Judge has used to the prosecution has been much different than the tone of voice that has been used to the defense.

Verbatim Report of Proceedings (Apr. 4, 1991), at 33. Other concerns were that the judge had threatened sanctions against his attorneys, accused them of being unethical, and that the judge had not "inquire[d] of the prosecution with the same vehemence . . . why they did not provide [discovery]". Verbatim Report of Proceedings (Apr. 4, 1991), at 35. The judge, in part, responded:

> I will say that if my tone of voice has been different, Mr. Garrett, it is because your counsel have baited me and to some extent prodded me, but that is not excuse for a court to use a different tone of voice and I will apologize if I have used a different tone of voice. It has, however, not ever been in the presence of the jury if it existed at all. . . .
>
> Yes, I think I did accuse you of unethical conduct, Mr. Smith, but that was after you accused me of judicial misconduct and that is no reason to respond in that fashion. But things got a little out of hand, there is no question.

Verbatim Report of Proceedings (Apr. 4, 1991), at 43-44. As the judge recognized, and the record confirms, the conduct of the judge and counsel was, indeed, "out of hand". Verbatim Report of Proceedings (Apr. 4, 1991), at 44.

## II

### Incidents In The Presence Of The Jury

To support its result, the majority alleges that most of the vituperous exchanges were not made in the jury's presence.

The record, however, does not support that conclusion. In fact, the animosity was brought to the attention of the jury early on the first day of trial. During voir dire the judge sustained an objection to a defense question regarding where a prospective juror parked when shopping at the mall where the alleged crime was committed. The judge called a sidebar to discuss the objection and told counsel that he would allow time later to place the discussion on the record. Defense counsel then completed his questioning of that juror. After the next venireperson had been examined by the prosecutor, the defense attorney requested an opportunity to recess and make his record regarding the earlier ruling. The judge declined. Defense counsel then indicated that he had no questions. He also declined to question the remaining three venirepersons, stating that he had an objection which he wished to put on the record. The judge then decided to include the jury and the following remarks were made:

> THE COURT: Well I think the jury ought to know what is going on. There was an objection and I ruled against Mr. Smith on a point and he seems to think I was wrong so we have a disagreement.
>
> MR. SMITH: No, I want it on the record.
>
> THE COURT: You will get in on the record.
>
> Mr. Smith, you will get it on the record when the jurors are dismissed. You don't need it before then because it isn't going to affect the situation at all. All right?

Verbatim Report of Proceedings (Apr. 1, 1991), at 103.

On the morning of the second day defense counsel resumed his opening statement with a remark which blatantly violated the judge's ruling regarding the victim's criminal history. This followed a particularly unpleasant exchange in chambers which ended by cross accusations of judge and attorney "bashing". Verbatim Report of Proceedings (Apr. 2, 1991), at 36.

> MR. SMITH: The court has directed me not to go into this man's —
>
> MR. LONG: Objection.
>
> THE COURT: You don't even have to talk about it[;] finish your opening statement.

MR. SMITH: But I think the testimony is going to show the man is not really lily white as the prosecutor would have you believe. Let's go back to the scene at the mall. The testimony from the mall security and from anybody —

MR. LONG : Objection; personal opinions are improper.

THE COURT: They are improper. This is merely an opening statement and that is all.

MR. SMITH : Do you want to make it for me? I have a witness, Mel Mocabee, who is going to testify the lot is lit up with 1,000 watt bulbs. Do you not want to hear that either?

THE COURT: You are mischaracterizing what I said. You can outline what the evidence will show, but no personal opinions.

Verbatim Report of Proceedings (Apr. 2, 1991), at 38.

Later, following defense counsel's cross examination of the victim, the prosecutor moved to reopen his direct examination and the following remarks were made:

THE COURT: Do you want to argue about that?

MR. SMITH: At this point, no, only as to pants. I'm not going to have him up here talking to the guy about what he just went over his testimony about.

MR. LONG: I object.

THE COURT: What he will be permitted to ask is what I rule he has a right to ask. I'm going to permit him to re-open. He can bring in anything that is relevant to the issues in this case and if you wish to attack that evidence, it is your prerogative and duty to do so.

Verbatim Report of Proceedings (Apr. 2, 1991), at 122.

At a point later in the victim's testimony the prosecutor was permitted to refresh the victim's memory with the report prepared by police regarding the incident. Defense counsel objected and the following discussion ensued:

THE COURT: Is the police report consistent with what this young man testified?

MR. SMITH: I don't like that, whether or not it is consistent.

THE COURT: I don't care whether you like it or not. Is it consistent?

Verbatim Report of Proceedings (Apr. 2, 1991), at 127.

The impact of the conflict between counsel and judge on the jury was recognized implicitly by both the defense attorney and the judge. In his closing argument, defense counsel made a speech about the adversarial nature of the legal system. He then added,

> Because of the nature of that, you may see at times that I get short with the judge or say things like that which I can see smiles on your faces or he is short with me or the prosecutor or whatever.

Verbatim Report of Proceedings (Apr. 4, 1991), at 91.

In commenting on defense counsel's closing remarks after the jury was excused, the judge said,

> I think Mr. Smith, your effort to ingratiate yourself, in a [*sic*] the sense of the word, I guess, with the jury, in view of what I gather, you perceived the jurors or what you thought the jurors perceived in view of your conduct, didn't sell very well.

Verbatim Report of Proceedings (Apr. 4, 1991), at 119. The prejudice resulting from these exchanges in the jury's presence requires reversal under the reasoning of both *State v. Levy*, 8 Wn.2d 630, 113 P.2d 306 (1941) and *United States v. Altamirano*, 633 F.2d 147 (9th Cir. 1980).

## III

### THE STANDARD FOR REVERSAL

The majority misrepresents the standard for determining when a judge's improper remarks require reversal. Citing *Levy*, the majority implies that reversal is not required because the judge's remarks "were not 'reasonably calculated to influence the judgment of the jury'." Majority, at 522. Whether the judge intended prejudice is not the standard articulated by this court in *Levy*. Rather, the court held that "[t]o warrant reversal, it must . . . appear that prejudice resulted, or could reasonably be presumed to have resulted, from such error". *Levy*, at 644.

The court's decision in *Levy* is instructional. In that case the trial judge warned counsel regarding certain lines of inquiry. After counsel disregarded the court's admonitions the judge fined counsel $25 in the presence of the jury. When counsel offered to write a check the judge refused to accept it. The following day the judge admonished the jury, emphatically and at length, to draw no inference from the previous day's occurrence. Trial counsel did not request a mistrial. The court recognized that where the contempt of counsel provokes the court's rebuke, as occurred in that

case, a judge may properly take action in front of the jury. *Levy*, at 642. Nevertheless, the court reversed, finding that the judge's refusal to accept counsel's check required a new trial:

> The most obvious, if not the only, inference to be drawn from the trial court's refusal to take counsel's check being that the court distrusted counsel, the incident in question clearly belongs within the class of incidents the natural tendency of which would be to result in prejudice. In such a situation, this court should not speculate as to the actual effect of the trial court's actions and remarks, and we are therefore constrained to hold that the matter constituted reversible error.

*Levy*, at 648.

Application of *Levy* in the instant case demands reversal. As in *Levy*, the conduct of counsel provoked the remarks made by the judge in front of the jury. Even though the judge's improper remarks were provoked by counsel, *Levy* requires that we consider whether the judge's remarks actually prejudiced the Defendant. If the remarks are in the "class of incidents the natural tendency of which would be to result in prejudice" then reversal is required. *Levy*, at 648. As in *Levy*, the incidents which occurred before the jury in this case are susceptible of only one inference — that the judge is hostile to the Defendant's cause.

The *Levy* court recognized the tremendous influence of the judge over the jury's attitude toward the parties. The court's cite to language explaining the significant role of the judge in forming juror attitudes bears the attention of this court in the instant case.

> "Persons accused of crime have the right to be represented by counsel whose usefulness shall not be impaired by any unfavorable remark or critical attitude on the part of the trial judge in the presence of the jurors, who are quick to observe, and apt to receive, hostile impressions which deprive them of that fair and unbiased mental attitude which every juror should at all times possess in order to do justice between the state and the defendant at the bar. . . . As was said in *State v. Phillips*, 59 Wash. 252, 109 Pac. 1047 [(1910)]:
> "'The aid of counsel is guaranteed by the constitution to every person accused of crime, and this is universally recognized as one of the surest safeguards against injustice and oppression. Any conduct or statement on the part of the court

that tends to impair the influence or destroy the usefulness of counsel is palpable and manifest error.'

*Levy*, at 643. Instead, the majority erroneously denies the Defendant here these protections by twisting *United States v. Altamirano*.

## IV

### The Defendants Nonparticipation and Defense Counsel's Overall Deficient Performance

Apparently concerned that reversal would reward the Defendant for the outrageous conduct of defense counsel, the majority ignores the criteria justifying reversal outlined in *Altamirano*. Aside from the contradiction inherent in this conclusion, the majority misreads *Altamirano* to reach its result.

In *Altamirano*, the federal court observed that a reviewing court must distinguish between conscious unprofessional conduct and involuntary ineptitude to avoid the former being used to secure mistrial. *Altamirano*, at 150-51. In determining whether a fair trial had occurred, the court examined the conduct of both counsel and the judge, the defendant's involvement with counsel's conduct, and whether this conduct prejudiced the defense. *Altamirano*, at 152-54. In that case, there was no suggestion of improper responses by the judge in the presence of the jury. Moreover, the defendant in that case was fully aware of the actions of his attorney and was found by the court to be a knowing participant in the behavior. Finally, that court did not identify any failure in counsel's performance beyond his unprofessional conduct.

In contrast, the trial judge in the instant case responded improperly to the unprofessional remarks of counsel in the presence of the jury. Further, as the Court of Appeals correctly found, the record here in no way reflects the Defendant's participation or acquiescence. *Garrett*, slip op. at 35.

Most importantly, the Court of Appeals identified two instances of deficient performance in addition to the unpro-

fessional conduct of counsel, both of which support that court's decision to reverse. First, defense counsel stubbornly refused to brief the issue of whether the victim's juvenile criminal history was admissible for impeachment. "As a result, Garrett was deprived of the potential opportunity of informing the jury that the complaining witness had been convicted of third degree theft, a crime of dishonesty." *Garrett*, slip op. at 30. The issue of credibility was particularly significant in this case because no one witnessed the alleged molestation of the teenage victim by the Defendant, a victim with a lengthy history.

Second, the Court of Appeals noted that the Defendant had assigned error to the trial court's ruling that defense counsel were not permitted to explore possible felony theft charges with a key state witness, Mr. Adams. *Garrett*, slip op. at 19 n.9. While defense counsel raged about the court's ruling, they never provided bon the issue, losing any possibility for impeachment.

To justify its result, the majority attempts to limit the claim of ineffective assistance of counsel to the single issue involving unprofessional exchanges with the judge stating, "[t]here is no claim in this case that defense counsel committed errors in their representation of Respondent Garrett." Majority, at 520. That is simply not correct. These two additional instances of counsel's performance together, as well as each standing alone, constituted ineffective assistance. The fact that the majority wishes to use this case as a vehicle to emphatically deplore attorney misconduct does not justify ignoring the remaining flaws in defense counsel's performance.

CONCLUSION

There is no question that the job of trial judge is difficult. Increasing caseloads and diminishing resources for the courts, prosecutors, and defense have increased pressure on the system. The Supreme Court is right to be concerned, even alarmed perhaps, by the extreme disrespect for the court shown by defense counsel in this case. However, our

legitimate concerns should take the form of additional tools for the judges in this state, including educaiton in the use of sanctions and other appropriate methods of courtroom control. We should also remind judges that robes do not license ill temper and that personal restraint is more likely to foster attorney respect. Focusing on the attorney conduct, as the majority does in this case, begs these important issues.

The Court of Appeals deftly balanced these concerns against the right of the Defendant to a fair trial and correctly concluded that reversal is required. That decision should be affirmed.

Reconsideration denied November 3, 1994.