# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON,<br><br>                    Respondent,<br><br>          v.<br><br>ANDREW ALLEN ECK,<br><br>                    Appellant. | No. 79108-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

APPELWICK, J. — Eck appeals his conviction for second degree assault. He argues his counsel was ineffective for failing to request a "no duty to retreat" jury instruction. We affirm.

FACTS

On July 28, 2017, James Caldwell celebrated his birthday at a bar in Burien. While at the bar, Caldwell met an individual named Andrew Eck. Caldwell introduced himself to Eck and some friends who were sitting in a booth and invited them to play pool. Eck's friends joined Caldwell but Eck did not. The group played pool, drank, and engaged in conversation for several hours. During the course of the conversation, Caldwell made several comments to one of the women that offended her. Eck had been sitting with the woman who was offended by Caldwell's remarks.

As the bar closed, Caldwell went outside to smoke a cigarette. Eck approached Caldwell in an aggressive manner shouting vulgarities and made a comment about Caldwell's sexuality. Eck had heard Caldwell was gay earlier in

Citations and pin cites are based on the Westlaw online version of the cited material.

the evening. Multiple bystanders attempted to calm Eck down. One bystander stepped in between Eck and Caldwell in an attempt to diffuse the situation.

The situation continued to escalate. The bystander standing between the two men stepped out from in between them for a moment. Shortly afterward, Eck punched Caldwell in the face, knocking him unconscious.

Witnesses disputed what happened directly before the punch. One witness claimed she saw Caldwell make "kind of an aggressive motion" towards Eck before the punch. She described the motion as "pump[ing] his chest towards [Eck]." Another witness testified that prior to the punch, Eck was walking away from Caldwell when he suddenly ran back and "sucker punched" Caldwell. She described the punch as "out of nowhere." After the punch, bystanders called the police and Eck fled the scene. Police apprehended him down the street.

The State charged Eck with assault in the second degree. At trial, he argued that he acted in self-defense. During opening arguments defense counsel conceded that Eck had punched Caldwell. Counsel acknowledged there would be differing testimony but noted that one witness would testify that Caldwell had "ma[de] a move towards Mr. Eck." Counsel stressed that everything had happened in an "instant."

After both parties rested, the parties finalized the instructions to the jury. The State sought to preclude Eck from arguing self-defense. Defense counsel argued that there was sufficient evidence for the jury to conclude Eck acted in self-defense. The court agreed and included a self-defense instruction in the jury instructions. The court also included an instruction indicating that self-defense is

2

not available to a person who created the situation necessitating their self-defense. Defense counsel did not request an instruction indicating that Eck had no duty to retreat from the conflict, and no such instruction was included with the jury's instructions.

The parties proceeded to closing arguments. The State primarily argued in closing that Eck had started the fight and therefore could not avail himself of self-defense to excuse his actions. At no point during closing did the State argue that Eck should have retreated from the situation. Defense counsel again argued that Eck acted in self-defense from Caldwell's "aggressive" move toward him. He stressed multiple times how quickly everything happened, calling the parties actions "split second decisions."

The jury found Eck guilty as charged. Eck appeals.

DISCUSSION

Eck argues that he received ineffective assistance of counsel because his trial counsel failed to request a jury instruction indicating that he had no duty to retreat from the confrontation.

To establish ineffective assistance of counsel, Eck must show that his counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by the performance. State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). Counsel is presumed to be effective. Id. Deficient performance is not shown by matters that go to trial strategy or tactics. State v. Garrett, 124 Wn.2d 504, 520, 881 P.2d 185 (1994). It is Eck's burden to show that, but for counsel's unprofessional errors, there is a reasonable probability that the

result of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L. Ed. 2d 674 (1984).  We review ineffective assistance of counsel claims de novo.  State v. Rafay, 168 Wn. App. 734, 775, 285 P.3d 83 (2012).

Eck has failed to meet his burden to show his trial counsel was ineffective. Defense counsel presented a coherent self-defense theory of the case and successfully argued for the inclusion of jury instructions consistent with that theory. An important aspect of his argument was that events transpired within a short amount of time, necessitating a split-second decision for Eck to utilize self-defense. Requesting a jury instruction suggesting a duty to retreat would have been inconsistent with this theory of the case.  The State's theory of the case was that Eck started the fight.  Because the State was not arguing he had a duty to retreat, the instruction would have served only to confuse the jury.  Defense counsel's decision not to request that instruction was therefore a legitimate trial tactic that cannot form the basis for an ineffective assistance of counsel claim.

We affirm.

_Appelwick, J._

WE CONCUR:

_Brennan, J_            _Dwyer, J._